UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DARIAN HALL,                                    )
                                                )
                                                )
                Plaintiff,                      )
                                                )
        vs.                                     )        Case No. 4:19-CV-00008 JCH
                                                )
JUSTIN BILSKEY, et al.,                         )
                                                )
                Defendants.                     )

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion for summary judgment filed by

Defendants Justin Bilskey ("Bilskey"), Lucas R. Wells ("Wells"), and Dayton Purcell ("Purcell"),

(collectively, "Defendants"). (Doc. 31). Plaintiff brings this action under 42 U.S.C. § 1983,

asserting a claim of deliberate indifference to a serious medical need, in violation of the Eighth

Amendment.  The claim arises out of events that occurred on May 1, 2018, when Plaintiff

attempted to commit suicide by hanging himself in his cell.  Also before the Court is *pro se* Plaintiff

Darian Hall's ("Hall" or "Plaintiff") motion for subpoenas. (Doc. 44).  For the following reasons,

the Court will grant Defendants' motion for summary judgment, and will deny Plaintiff's motion

for subpoenas.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

As an initial matter, the Court will address some procedural issues regarding precisely what

facts are before the Court for purposes of the instant motion for summary judgment.  The Court

notes that, in support of their motion for summary judgment, Defendants submitted a Statement of

1

Uncontroverted Material Facts ("SOF").  *See* Doc. 27-1.  Plaintiff, in his response to Defendants'

motion, did not respond to or attempt to controvert anything in Defendants' SOF.  Fed. R. Civ. P.

56(c)(1) provides in pertinent part that "[a] party asserting that a fact cannot be or is genuinely

disputed must support the assertion by (A) citing to particular parts of materials in the record,

including depositions, documents, electronically stored information, affidavits or declarations,

stipulation (including those made for purposes of the motion only), admission, interrogatory

answers or other materials."   Upon the failure to properly controvert a movant's statement of

material fact, such statement "will be deemed admitted for the purposes of the motion."  Fed. R.

Civ. P. 56(c)(1).   Likewise, under the Local Rules of the United States District Court for the

Eastern District of Missouri, all matters set forth in the statement of the movant shall be deemed

admitted for purposes of summary judgment unless specifically controverted by the opposing

party.  *See* E.D. Mo. L.R. 4.01(E).

The Court is mindful that Plaintiff does not have an attorney.  Notwithstanding his *pro se*

status, however, Plaintiff must still follow the Federal Rules of Civil Procedure and of this Court.

*See Meehan v. United Consumers Club Franchising Corp*., 312 F.3d 909, 914 (8th Cir. 2002) ("All

civil litigants are required to follow applicable procedural rules."); *Lindstedt v. City of Granby*,

238 F.3d 933, 937 (8th Cir. 2000) (per curiam) ("A *pro se* litigant is bound by the litigation rules

as is a lawyer . . .."); *Silberstein v. Internal Revenue Serv*., 16 F.3d 585, 860 (8th Cir. 1994) ("local

rules . . . are binding on the parties.").  Plaintiff's response to Defendants' SOF does not satisfy

Fed. R. Civ. P. 56(c)(1) or Local Rule 4.01 as Plaintiff does not attempt to controvert any of

Defendants' facts with appropriate material from the record.   Because Plaintiff has not

controverted the facts set forth in Defendant's SOF, the Court finds that Defendants' SOF is

deemed admitted in its entirety by Plaintiff.  *See Jones v. United Parcel Serv., Inc*., 461 F.3d 982,

991 (8th Cir. 2006) (district court properly deemed facts admitted that were not properly controverted; Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may (2) consider the fact undisputed for purposes of the motion.').

Additionally, Plaintiff attached an exhibit to his response in opposition to Defendants' motion for summary judgment, entitled "Declaration Affidavit". *See* Doc. 41-1. The "Declaration Affidavit" was not notarized and was unsworn, but Plaintiff did sign and date the document, and stated that his assertions therein were made under penalty of perjury. Defendants assert that this "Declaration Affidavit" does not constitute evidence that may be relied on for purposes of summary judgment. However, pursuant to 28 U.S.C. § 1746, unsworn declarations may be treated as equivalent to sworn affidavits for purposes of a summary judgment motion under limited conditions: such declarations must, to be considered as evidence, be signed, dated, and include a statement attesting that "under penalty of perjury . . . the foregoing is true and correct." 28 U.S.C. § 1746. Because Plaintiff's "Declaration Affidavit" is signed, dated, and includes a statement attesting that the statements therein are made under penalty of perjury, it satisfies the text of 28 U.S.C. § 1746, and the Court will treat it as admissible evidence to support Plaintiff's claim.

However, Defendants additionally, and accurately, argue that Plaintiff's "Declaration Affidavit" is not inconsistent with Defendants' Statement of Uncontroverted Material Facts. Plaintiff's "Declaration Affidavit" does, however, contain some assertions that are in addition to the facts as stated by Defendants in their Statement of Uncontroverted Material Facts. First, Plaintiff states that he told each Defendant that he felt suicidal, though he does not describe when or in what manner he conveyed his condition. Further, Plaintiff states that after he declared that he was suicidal, "the Defendants acted dismissively," but he does not provide further details

regarding the asserted dismissive behavior.  Doc. 41-1 at 1.  Plaintiff also states that he attempted suicide "a few weeks prior" to the events at issue in this lawsuit, but he does not allege that any of Defendants were aware of this prior attempt.  Additionally, the record contains no evidence that any of the three Defendants knew of the prior attempt.  *Id*.  Plaintiff further states that he continues to suffers from a neck and leg injury as a result of his suicide attempt.  *Id*. at 2.

Finally, there is one last procedural issue the Court must address.  Defendants' motion for summary judgment was fully briefed on January 31, 2020, when Defendants filed their reply to Plaintiff's opposition to the motion.  *See* Doc. 42.  However, in February and March, Plaintiff filed documents that he styled as "Supplement[s]" to his response in opposition.  The Court will construe each of the Supplements as a surreply to Defendants' reply.  Defendants ask the Court to strike, or in the alternative, disregard the Supplements as unauthorized, untimely, and improper.

The Court may strike procedurally improper or untimely filings from the docket under the Court's inherent power to control the cases on its docket and to sanction conduct which abuses the judicial process.  *See Chicago Ins. Co. v. City of Council Bluffs, Iowa*, No. 1:07-cv-21, 2012 WL 130 18889, at *2 (S.D. Iowa Jan. 10, 012).  Defendants are correct in their assertion that Plaintiff's unauthorized surreplies are procedurally improper, as he is only permitted to file one response to the motion for summary judgment.  Local Rule 4.01 provides, in pertinent part, that a party opposing a motion must file "a single memorandum containing any relevant argument and citations to authorities on which the party relies."  L.R. 4.01(B).  The Local Rule additionally states that "[a]dditional memoranda may be filed by either party *only* with leave of Court."  *See* L.R. 4.01(C).  Further, even if Plaintiff's "Supplements" were not procedurally improper, they are untimely.  Defendants' motion for summary judgment was filed on December 18, 2019.  Local Rule 4.01(F) provides that "[a] party opposing a motion for summary judgment under Fed. R. Civ. P. 56 shall

file a memorandum and any appropriate documentary evidence twenty-one (21) days after being served with the motion.   L.R. 4.01(F).   Accordingly, Plaintiff's response and supporting documentation was due by January 8, 2020.   Plaintiff sought, and was granted an extension to respond, and he filed his response in opposition to Defendants' motion for summary judgment on January 17, 2020.   Doc. 41.   Defendants filed their reply to Plaintiff's response on January 31, 2020, at which time the motion was fully briefed and ripe for ruling.   Doc. 42.

Plaintiff filed his first "Supplement" on February 13, 2020 (Doc. 43), and his second "Supplement" on March 16, 2020, more than two months after his response was initially due.   *See* Doc. 46.   Plaintiff did not request leave of the Court to file either of the documents at issue.   As noted *supra*, "[e]ven pro se litigants must comply with court rules and directives."   *Soliman v. Johanns*, 412 F.3d 920, 922 (8th Cir. 2005) (citation omitted).   *See also Johns v. City of Florissant*, Case No. 4:18CV1121 AGF, 2019 WL 3323015 at *1 (E.D. Mo. Jul. 24, 2019).   Because they are procedurally improper and untimely, the Court will strike Plaintiff's "Supplement[s]" from the record in this matter, and will not consider information in those documents in ruling on the Defendants' pending motion for summary judgment.

The following facts are taken from Defendants' undisputed SOF, the exhibits filed in support thereof, and Plaintiff's "Declaration Affidavit." At the time of the events giving rise to his complaint, Plaintiff was an inmate at the Eastern Reception Diagnostic and Correctional Center ("ERDCC"), where he was housed in the administrative segregation unit. Defendants were employed at ERDCC as corrections officers.  On April 30, 2018, Defendant Bilskey and Defendant Purcell were working a shift that began at 3:00 p.m. and ended at 11:00 p.m.  At approximately 6:00 p.m., while conducting a routine search of the unit, Bilskey and Purcell found contraband in Plaintiff's cell.  Defendant Bilskey gave Plaintiff a conduct violation for having the contraband in

his cell.  Upon receiving the conduct violation, Plaintiff became angry and yelled, "I'm suicidal, get me out of here."

Pursuant to ERDCC policy, correctional officers are to use restraints on inmates who express an intent to harm themselves.  When Plaintiff told Bilskey that he was suicidal in response to hearing that he was receiving a conduct violation, according to the policy, Bilskey attempted to place wrist restraints on Plaintiff in order to transfer him to a suicide-watch cell.  Plaintiff actively resisted, repeatedly refusing to submit to the wrist restraints. Bilskey asked the Sargent on duty at the time to help him place wrist restraints on Plaintiff, and Plaintiff again resisted, despite multiple attempts by Bilskey and the Sargent to subdue him.  Eventually, Plaintiff allowed himself to be placed back in his cell.  Plaintiff thought that he was treated dismissively by Defendants when he said he was suicidal.

At approximately 10:35 p.m., Defendant Purcell checked on Plaintiff during a routine wing-check, and noticed nothing unusual. At approximately 10:45 p.m., before leaving for the day, Bilskey noticed that Plaintiff's cell window was covered with a towel, and he asked him to uncover the window.  Plaintiff cussed at Bilskey and, though obviously angry, Plaintiff was clearly able to speak, was in no obvious physical distress, and did not say anything about being suicidal.  Before Bilskey went home, he alerted the next shift that Plaintiff was upset, and left the prison for the night.

Defendant Wells worked the late-night shift at ERDCC, which started at 11:00 p.m. on April 30, 2018, and ended at 7:00 a.m. on May 1, 2018.  On the late-night shift at ERDCC, routine cell checks occurred approximately every thirty minutes.  At one of these checks, at around 11:15 p.m., Defendant Wells noticed that Plaintiff's cell window was covered with a towel or something similar.  Wells knocked on his cell door and told Plaintiff to remove the covering.  Plaintiff

6

responded that he just wanted a little privacy, and did not inform Wells of any suicidal thoughts. Plaintiff then uncovered his window without argument or issue.  During another of Wells's routine checks of Plaintiff's wing at approximately 12:45 a.m. on May 1, 2018, another employee noticed that Plaintiff's cell window was once again covered.  That employee summoned Wells to Plaintiff's cell at 12:50 a.m., where Wells kicked on the door to get Plaintiff's attention.  When Plaintiff did not respond, Wells looked into the cell through the food port and saw Plaintiff hanging from his bunk.  Wells immediately called for assistance and entered the cell at 12:51 a.m., and he and his co-workers removed the noose Plaintiff had made and called for medical assistance. Wells helped load Plaintiff onto a stretcher and took him outside, where a waiting ambulance transported Plaintiff to the hospital at approximately 1:08 a.m.

While en route to the hospital, the medical providers were not able to find a sufficient vein to insert an intravenous infusion, so they had to place an intraosseous infusion, which is a process whereby fluids and medications are injected directly into the marrow of a patient's bone.  After Plaintiff returned to ERDCC two days later, he was placed on full suicide watch until a mental health professional evaluated his mental well-being.  Plaintiff's neck remains painful from the hanging attempt, and his leg still hurts where the paramedics placed the intraosseous infusion.

## II.   LEGAL STANDARD ON SUMMARY JUDGMENT

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013). The movant "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant does so, the nonmovant

must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.* at 324.

When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by other evidence must set forth specific facts showing that a genuine issue of material fact exists.  Fed. R. Civ. P. 56(e).  Self-serving, conclusory statements, standing alone, are insufficient to defeat a well-supported motion for summary judgment.  *O'Bryan v. KTIV Television*, 64 F.3d 1188, 1191 (8th Cir. 1995).

In determining if a genuine issue of material fact is present, the court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Further, a court must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376–77 (8th Cir. 1996).

## III.   DISCUSSION

### A.  Defendants' Motion for Summary Judgment

Defendants argue that Plaintiff has presented no evidence showing that Defendants were deliberately indifferent to Plaintiff's constitutional rights, and they are entitled to qualified immunity.  Defendants assert they are entitled to qualified immunity due to the reasonableness of their actions and the preventative measures they undertook on the day of the incident in question. Defendants further argue that they are entitled to judgment as a matter of law because Plaintiff

failed to counter any of the arguments in their motion for summary judgment and failed to respond to any of Defendants' Statement of Uncontroverted Material Facts.

As noted by Defendants, Plaintiff did not counter any of Defendants' arguments in support of their motion, nor did he respond to their Statement of Uncontroverted Material Facts, as required by Fed. R. Civ. P. 56 and Local Rule 4.01. Instead, Plaintiff argues, in his response in opposition, that Defendants' motion should be denied because he has not had sufficient time to conduct discovery.[1] However, his assertion is not substantiated by the record in this action. Plaintiff filed his case on January 2, 2019, and served no written discovery on Defendants since that time. Now, almost two years after he first filed suit, Plaintiff cannot avoid summary judgment by baldly asserting that he has not had sufficient time to conduct discovery in his case. The record does not contain any discovery disputes filed by Plaintiff, including any motions to compel discovery. Indeed, the only attempt to conduct discovery apparent on the record is Plaintiff's motion for subpoenas, which was filed after the instant motion for summary judgment was fully briefed, and which does not appear to seek information relevant to the merits of Plaintiff's claim. Plaintiff has not explained how further discovery would uncover information to refute the legal arguments raised in Defendants' motion for summary judgement, nor has he explained why he has not previously discovered any information he may seek. The Court concludes that Plaintiff has failed to show that he needs more time for discovery, and will not deny Defendants' motion for summary judgment on that basis.

---

[1] The Court notes that Plaintiff does not move for additional time to conduct discovery pursuant to Fed. R. Civ. P. 56(d), and even if he had so moved, he has not complied with the requirements of that Rule, which states in pertinent part that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to . . . take discovery; or (3) issue any other appropriate order." Plaintiff has not filed an appropriate affidavit or otherwise attempted to explain, "for specified reasons," why he cannot present facts essential to his opposition.

The Court will turn now to Defendants' qualified immunity argument.  "The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known. The dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. The qualified immunity analysis, thus, is limited to the facts that were knowable to the defendant officers at the time they engaged in the conduct in question." *Hernandez v. Mesa* 137 S. Ct. 2003, 2007 (2017) (citations omitted). This immunity permits "officers to make reasonable errors," and provides "ample room for mistaken judgments." *Borgman v. Kedley*, 646 F.3d 518, 522 (8th Cir. 2011) (internal quotations omitted).  The defense "protects public officials unless they are 'plainly incompetent' or 'knowingly violate the law.'" *Id*. (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

The Court uses a two-pronged test to resolve qualified immunity issues. First, "the court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Id.* at 232 (citations omitted). Second, "the court must decide whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Id.* (quotation marks and citations omitted). If either prong is not satisfied, qualified immunity applies. *Id.* The Court is free to address the two prongs in either order. *Id.* at 236.  "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589, 2018 WL 491521, at *11 (Jan. 22, 2018). "Once the predicate facts are established, the reasonableness of the official's conduct under the circumstances is a question of law." *Tlamka v. Serrell*, 244 F.3d 628, 632 (8th Cir. 2001) (citation omitted).

Additionally, "[a]lthough qualified immunity is an affirmative defense, the burden is on the plaintiff to plead, and, if presented with a properly supported motion for summary judgment, to present evidence from which a reasonable jury could find that the defendant officer has violated the plaintiff's constitutional rights." *Moore v. Indehar*, 514 F.3d 756, 764 (8th Cir. 2008). *See also Wilson v. Lamp*, 901 F.3d 981, 986 (8th Cir. 2018) ("To defeat qualified immunity, a plaintiff has the burden to prove: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation."). In the jail suicide context, qualified immunity is appropriate when a plaintiff "has failed to show . . . that his jailers have acted in deliberate indifference to the risk of his suicide." *Luckert v. Dodge Cty.*, 684 F.3d 808, 817 (8th Cir. 2012).

Prisoners have a "clearly established constitutional right to be protected from the known risks of suicide and to have [their] serious medical needs attended to." *Whitney v. City of St. Louis, Mo.*, 887 F.3d 857, 860 (8th Cir. 2018) (alteration in original) (internal quotation omitted). "The Eighth Amendment prohibits jail officials from acting with deliberate indifference towards risks of suicide." *Id.* at 860. "Deliberate indifference is 'akin to criminal recklessness,' something more than mere negligence; a plaintiff must show that a prison official 'actually knew that the inmate faced a substantial risk of serious harm' and did not respond reasonably to that risk." *A.H.*, 891 F.3d at 726 (quoting *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006). *See also Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014) ("Deliberate indifference is an extremely high standard that requires a mental state "akin to criminal recklessness.") Thus, Plaintiff must show "'more than negligence, more even than gross negligence.'" *Fourte v. Faulkner Cty., Ark.*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)). Additionally, the Eighth Circuit has instructed that a determination of an official's

deliberate indifference requires an objective and subjective analysis. *Whitney*, 887 F.3d at 860. Accordingly, to establish deliberate indifference to his safety, Plaintiff must show that each Defendant had actual knowledge that he posed a substantial risk of suicide, and the Defendant failed to take reasonable steps to abate that risk. *Whitney*, 887 F.3d at 860.

The Eighth Circuit has made clear that an inmate's suicide itself, or the attempt thereof, is not probative of the question whether correctional officials' measures taken were so inadequate as to be deliberately indifferent to the risk of suicide because:

> [T]ying the suicide to proof of deliberate indifference is tantamount to requiring jailers to provide suicide-proof institutions," and to ensure against suicide ever happening. This is not the constitutional test. Instead, we must objectively consider the measures taken in light of the practical limitations on jailers to prevent inmate suicides. Simply laying blame or fault and pointing out what might have been done is insufficient. The question is not whether the jailers did all they could have, but whether they did all the Constitution requires. In evaluating an official's response to a known suicide risk, we should be cognizant of how serious the official knows the risk to be.

*Luckert*, 684 F.3d at 818 (internal citations and footnote omitted).

Here, there is no indication that Defendants were aware of Plaintiff's prior suicide attempt. Therefore, the Court must examine their actions in light of what they knew of Plaintiff's risk for suicide based on the information each Defendant had on the night of the relevant suicide attempt on May 1, 2018. In doing so, the Court "must objectively consider the measures taken in light of the practical limitations on jailers to prevent inmate suicides." *Luckert* at 817.

Plaintiff asserts that he told each Defendant that he was suicidal. The record shows that when Defendant Bilskey told Plaintiff that he was receiving a conduct violation, Plaintiff became angry and yelled that he was suicidal. The record does not contain evidence concerning precisely how information concerning Plaintiff's suicidal feelings were conveyed to Defendants Purcell or Wells. The Court notes that Defendants Purcell and Wells, in their respective affidavits submitted

12

in support of their motion for summary judgment, attest that they were not told that Plaintiff had declared himself suicidal.  However, Plaintiff states in his "Affidavit," that he "told each Defendant that [he] was suicidal," and the Court will construe the facts before it in the light most favorable to Plaintiff.  *See* Doc. 41-1.  Therefore, the Court will assume that each Defendant knew that Plaintiff had stated he felt suicidal on the evening in question.

The record establishes that once Plaintiff told Bilskey that he was suicidal in response to being informed of his conduct violation, Defendant Bilskey attempted to get Plaintiff to submit to wrist restraints multiple times with the intention to move him to a suicide-watch cell, and that Plaintiff refused to submit.  Defendant Bilskey then sought assistance from another officer, and they both attempted to gain Plaintiff's compliance with the request that he submit to wrist restraints.  Plaintiff again refused to comply with the request, and he was subsequently placed back in his cell.  Defendant Purcell observed Plaintiff in his cell at approximately 10:35 p.m., at which time he noticed nothing unusual about Plaintiff, and Plaintiff did not say anything about feeling suicidal.  Defendant Bilskey checked on Plaintiff a few minutes later, just prior to the end of Bilskey's shift, at which time he noticed that Plaintiff had covered the window to his cell in a way that prevented officers from seeing inside.  Bilskey asked Plaintiff to remove the window covering so that he could be observed when officers made their rounds.  At that time, Plaintiff spoke angrily to Defendant Bilskey, but did not restate his claim of being suicidal.  Before Defendant Bilskey left for the night, he informed the oncoming shift officers that Plaintiff was angry and upset.  When Defendants Bilskey left at the end of his shift, Plaintiff appeared to be physically well and was responding to verbal communication.

It would certainly have shown more concern for Plaintiff's well-being and safety if Defendant Bilskey had informed the next shift not just that Plaintiff was angry about receiving the

conduct violation, but also that he had expressed earlier in the evening that he felt suicidal, and that Defendant Bilskey had attempted, unsuccessfully, to get Plaintiff to submit to restraints. However, Bilskey did attempt five different times to get Plaintiff to submit to wrist restraints so that he could be moved to a segregation unit for observation.  Furthermore, Bilskey checked on Plaintiff multiple times before the end of his shift.  It would be easy, in hindsight, to conclude that it would have been preferable for Bilskey to sustain his efforts in getting Plaintiff to cooperate in being moved to an observation unit, and to have provided the oncoming shift with a more complete picture of the events of the night.  However, the Court cannot say that Bilskey's failure to do so, in light of what he knew that night of the seriousness of Plaintiff's risk of self-harm, was akin to criminal recklessness.  There is no indication on the record that Bilskey was aware of Plaintiff's prior suicide attempt.  Such awareness would surely have made Plaintiff's statements regarding suicide on the evening in question seem more serious and urgent.  An official's actions that may "constitute poor judgment, negligence, or possibly even gross negligence" will not establish deliberate indifference if the official also took "affirmative, deliberative steps" to prevent an inmate's suicide.  *Luckert*, 684 F.3d at 818-819.  The Court cannot say that Bilskey's behavior rose to the level of deliberate indifference.

It is difficult to adequately assess the reasonableness of Defendant Purcell's actions, as there is no evidence on the record to demonstrate precisely what he knew about Plaintiff's mental state other than Plaintiff's assertion that he told him he felt suicidal.  Additionally, there is minimal evidence on the record regarding the actions taken by Purcell that evening with respect to Plaintiff. All that is evident from the record is that at approximately 10:35 p.m., Purcell checked on Plaintiff during a routine wing-check, and noticed nothing unusual either about Plaintiff's cell or his behavior. Defendant Purcell's shift ended shortly thereafter, and he left to go home at

approximately 11:00 p.m.  Based on this inconsiderable amount of evidence, the Court cannot find that Purcell's actions constituted deliberate indifference, as he took "affirmative, deliberative steps" to confirm Plaintiff's well-being before leaving at the end of his shift. *Luckert*, 684 F.3d at 818-819.

As for Defendant Wells, there is nothing on the record to indicate that he was deliberately indifferent to Plaintiff's health and safety.  Quite the contrary.  When Wells noticed that Plaintiff has covered his cell window, he asked him to remove the covering so that Wells and other guards could see inside the cell.  At approximately 12:45 a.m., Wells was called to Plaintiffs cell because the window was again covered.  Wells kicked on the door to get Plaintiff's attention.  When Plaintiff did not respond, Wells looked into the cell through the food port and saw Plaintiff hanging from his bunk.  Wells immediately called for assistance and entered the cell at 12:51 a.m., and he and his co-workers removed the noose from Plaintiff's neck and called for medical assistance.  Wells then helped load Plaintiff onto a stretcher and took him outside, where a waiting ambulance transported Plaintiff to the hospital at approximately 1:08 a.m.  These actions sufficiently establish that Wells was not deliberately indifferent to the risk of harm to Plaintiff.

The Court finds that although Plaintiff's attempt at self-harm was of course tragic, Plaintiff has not presented facts which raise any triable issue as to whether Defendants were deliberately indifferent to his safety or well-being.  Defendants are therefore entitled to qualified immunity.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment shall be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. 31) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's "Supplements" (Docs. 43 and 46) are **STRICKEN** from the record.

**IT IS FINALLY ORDERED** that Plaintiff's Motion for Subpoenas (Doc. 44) is **DENIED** as moot.

Dated this 23rd day of November, 2020.

/s/ Jean C. Hamilton
JEAN C. HAMILTON
UNITED STATES DISTRICT JUDGE